UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHY AMBERGE,

                Plaintiff,                  **DECISION AND ORDER**

         v.                                    6:23-CV-06564 EAW CDH

UNITED STATES OF AMERICA,

                Defendant.
_____

## INTRODUCTION

Plaintiff Kathy Amberge ("Plaintiff") commenced this action against defendant the United States of America ("Defendant"), arising from an accident that occurred when Plaintiff rode her bicycle into the back of a United States Postal Service ("USPS") vehicle. (Dkt. 1). Currently pending before the Court is a motion for summary judgment filed by Defendant. (Dkt. 23). For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND

**I.**     **Factual Background**

The following facts are taken from Defendant's Statement of Undisputed Facts (Dkt. 23-1), Plaintiff's Response to Defendant's Statement of Undisputed Facts (Dkt. 27), Plaintiff's complaint (Dkt. 1), and the exhibits submitted by Defendant. The facts are largely undisputed.

On July 21, 2022, at approximately 8:40 a.m., Plaintiff, an avid cyclist, was riding a road bicycle with low mounted handlebars on Tall Tree Drive and Five Mile Line Road

- 1 -

in the Town of Penfield. (Dkt. 23-1 at ¶¶ 1-2, 22-24; Dkt. 27 at ¶¶ 1-2, 22-24). Plaintiff had her cell phone mounted on the handlebars, and she was listening to a podcast. (Dkt. 23-1 at ¶¶ 5, 20; Dkt. 27 at ¶¶ 5, 20). There was no precipitation that morning. (Dkt. 23-1 at ¶ 11; Dkt. 27 at ¶ 11).

USPS Rural Carrier Michael Nixon ("Nixon") was driving a postal vehicle and delivering mail on his normal route. (Dkt. 23-1 at ¶ 6; Dkt. 27 at ¶ 6). After completing mail deliveries on Tall Tree Drive but while still in the neighborhood, he saw a bicyclist on Tall Tree Drive. (Dkt. 23-1 at ¶¶ 36-37; Dkt. 27 at ¶¶ 36-37). Nixon then made a right turn from Tall Tree Drive onto Five Mile Line Road, heading north. (Dkt. 23-1 at ¶ 38; Dkt. 27 at ¶ 38). He did not observe any bicycles northbound on Five Mile Line Road. (Dkt. 23-1 at ¶ 39; Dkt. 27 at ¶ 39). Nixon drove somewhere between 100 and 275 feet to the first mailbox located at 1683 Five Mile Line Road. (Dkt. 23-1 at ¶ 40; Dkt. 27 at ¶ 40). At no point did Nixon see Plaintiff pass him on a bicycle. (Dkt. 23-1 at ¶ 42; Dkt. 27 at ¶ 42).

After riding through the Tall Tree Drive neighborhood, Plaintiff took a right turn from Tall Tree Drive onto Five Mile Line Road. (Dkt. 23-1 at ¶¶ 23-24; Dkt. 27 at ¶¶ 23-24). Although Plaintiff slowed down as she made the turn, she did not stop at the intersection's stop sign. (Dkt. 23-1 at ¶ 25; Dkt. 27 at ¶ 25; Dkt. 23-4 at 27). As she rode on Five Mile Line Road, Plaintiff traveled between 10 and 12 miles per hour. (Dkt. 23-1 at ¶ 27; Dkt. 27 at ¶ 27; Dkt. 23-4 at 18). About 8 to 10 seconds after turning onto Five Mile Line Road, Plaintiff glanced down, either at her phone or her smartwatch, because she received a text message. (Dkt. 23-1 at ¶¶ 43-44; Dkt. 27 at ¶¶ 43-44). The next thing

Plaintiff remembers is colliding with the back of Nixon's postal vehicle. (Dkt. 23-1 at ¶ 45; Dkt. 27 at ¶ 45). The front tire of Plaintiff's bicycle hit the rear of the vehicle, and Plaintiff was projected forward off her bike, causing her face to collide with the vehicle. (Dkt. 23-1 at ¶¶ 48-49; Dkt. 27 at ¶¶ 48-49). Plaintiff alleges that as a result of the accident, she experienced injury to her cervical spine and face, requiring reconstructive surgery. (Dkt. 1 at ¶ 8.1).

When Plaintiff hit the postal vehicle, Nixon was parked at a complete stop on the shoulder of 1683 Five Mile Line Road. (Dkt. 23-1 at ¶¶ 46-47; Dkt. 27 at ¶¶ 46-47). The vehicle's hazard lights were activated. (Dkt. 23-1 at ¶ 50; Dkt. 27 at ¶ 50). Nixon got out of the vehicle and saw Plaintiff on the ground behind it. (Dkt. 23-1 at ¶ 54; Dkt. 27 at ¶ 54). Plaintiff asked Nixon to call her son, and when Nixon did so, he saw that a video was playing on Plaintiff's phone. (Dkt. 23-1 at ¶ 56; Dkt. 27 at ¶ 56; Dkt. 23-4 at 28).

The portion of Five Mile Line Road where the accident occurred is straight and flat, and there are no obstructions north of Tall Tree Drive. (Dkt. 23-1 at ¶ 13; Dkt. 27 at ¶ 13). Nonetheless, Plaintiff did not see the postal vehicle or its flashers at any time prior to the impact. (Dkt. 23-1 at ¶¶ 28, 51; Dkt. 27 at ¶¶ 28, 51). Plaintiff did not see Nixon pass her, drive at an unreasonable rate of speed, or fail to keep a proper lookout while Nixon drove on Five Mile Line Road. (Dkt. 23-1 at ¶¶ 29, 31-32; Dkt. 27 at ¶¶ 29, 31-32). At her deposition, Plaintiff testified that although she did not see Nixon's vehicle fail to yield to her right of way or pull out in front of her without warning and abruptly stop, she assumed that Nixon did so because the postal vehicle "didn't just come out of no place." (Dkt. 23-1 at ¶¶ 30, 33; Dkt. 27 at ¶¶ 30, 33; Dkt. 23-4 at 30-36).

Monroe County Sheriff's Deputy Nicholas Fagan ("Fagan") arrived at the scene and was told by Plaintiff that she did not see any vehicles in front of her as she traveled on Five Mile Line Road, and that she was looking down to check a text message when the accident occurred.[1] (Dkt. 23-1 at ¶¶ 65-66; Dkt. 27 at ¶¶ 65-66; *see* Dkt. 23-3 at 2; *see also* Dkt. 23-6 at 13-15).

Defendant retained Professional Engineer Eugene R. Camerota ("Camerota") to perform an accident reconstruction analysis. (Dkt. 23-7 at ¶¶ 1-2). Camerota analyzed the mobile delivery device data sheet from Nixon's postal vehicle and determined that Nixon's speed did not exceed 10 miles per hour as he traveled to 1683 Five Mile Line Road. (*Id.* at ¶ 6). Camerota opined, to a reasonable degree of engineering certainty, that: based on Plaintiff's testimony that she was traveling between 10 and 12 miles per hour, Nixon could not have passed Plaintiff on her bicycle as he turned right onto Five Mile Line Road and proceeded to mailbox number 1683 (*id.* at ¶ 7); even if it was possible that Nixon's vehicle passed Plaintiff, Plaintiff would have been close enough to the vehicle to see it and stop accordingly (*id.* at ¶¶ 6-7); Plaintiff had sufficient time and distance to notice the stopped

---

[1] Although Plaintiff disputes making this communication to Fagan and claims she testified at her deposition that she had no recollection of making any statement to the responding police officer (Dkt. 27 at ¶ 66), the only reference in support of that claim is a citation to a portion of Plaintiff's deposition not included in Defendant's exhibits. Because Plaintiff failed to submit any exhibits of her own, she has provided no proof to support this assertion, and the Court therefore finds it insufficient to raise an issue of fact. *See RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., Inc.*, 527 F. Supp. 3d 305, 315 (E.D.N.Y. 2021) ("To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried."). In any event, Plaintiff does not dispute that she glanced down to check a text message at the moment of impact. (Dkt. 27 at ¶¶ 43-44).

- 4 -

postal vehicle and maneuver around it or come to a stop (*id.* at ¶ 7); and Plaintiff's inattentiveness due to looking at her cell phone was the sole cause of the accident (*id.* at ¶ 7).

## II. Procedural Background

On September 28, 2023, Plaintiff filed this action against Defendant under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"), alleging negligence. (Dkt. 1 at ¶¶ 6.1-7.2). The instant motion for summary judgment was filed on March 14, 2025. (Dkt. 23). Plaintiff filed opposition papers consisting of a seven-page memorandum of law (Dkt. 26) and a response to Defendant's statement of undisputed facts (Dkt. 27). Plaintiff did not submit any evidentiary proof in opposition to Defendant's motion. Defendant replied to Plaintiff's opposition papers (Dkt. 28; Dkt. 29).

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact . . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486

(2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

II.   **Negligence**

The FTCA establishes the liability of the United States "for injury . . . or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. . . ." 28 U.S.C. § 1346(b)(1). Under the FTCA, the law of the place where the act or omission occurred applies. *Id.*; *see Guttridge v. United States*, 927 F.2d 730, 732 (2d Cir. 1991) ("[T]he FTCA defines the liability of the United States in terms of that of a private individual under

the law of the state where the alleged tort occurred[.]"). Here, the alleged negligence occurred in Penfield, New York, (Dkt. 1 at ¶ 6.2), so New York negligence law applies.

Under New York law, a claim of negligence requires a party to establish: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (quotation omitted); *see Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 333 (1981) ("[T]he elements necessary to a cause of action in negligence" include "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.").

Defendant contends that it is entitled to summary judgment because it has established a prima facie case of negligence on the part of Plaintiff, and Plaintiff has failed to proffer a non-negligent explanation in opposition. (Dkt. 23-9 at 10-14). Specifically, Defendant contends that because Plaintiff admits that she never saw the postal vehicle prior to impact, she glanced down at her phone or watch to look at an incoming text message, and her bicycle collided with the back of the stationary postal vehicle that had its hazard lights activated, Defendant has demonstrated that Plaintiff acted negligently. (*Id.*). Because Plaintiff has not provided a non-negligent explanation for the collision to rebut the inference of negligence, Defendant argues that summary judgment should be granted in its favor. (*Id.*). The Court agrees.

Pursuant to New York Vehicle and Traffic Law, "[e]very person riding a bicycle . . . shall be subject to all of the duties applicable to the driver of a vehicle. . . ." N.Y. Veh.

& Traf. Law § 1231 (McKinney 2025); *see Bliwas v. Paul*, 227 A.D.3d 852, 853 (N.Y. App. Div. 2024) ("A person riding a bicycle on a roadway is entitled to all of the rights and bears all of the responsibilities of a driver of a motor vehicle." (internal quotations and citations omitted)). Accordingly, "[a] bicyclist is required to use reasonable care for his or her own safety, to keep a reasonably vigilant lookout for vehicles, and to avoid placing himself or herself into a dangerous position." *Amancio-Gonzalez v. Medina*, 223 A.D.3d 861, 862 (N.Y. App. Div. 2024) (quoting *Palma v. Sherman*, 55 A.D.3d 891, 891 (N.Y. App. Div. 2008)) (further citation omitted); *see* N.Y. Veh. & Traf. Law § 1146 (McKinney 2025).

"[A] rear-end collision with a stopped vehicle establishes a prima facie case of negligence on the part of the driver of the rear vehicle." *Ruzycki v. Baker*, 301 A.D.2d 48, 49 (N.Y. App. Div. 2002) (quoting *Pitchure v. Kandefer Plumbing & Heating*, 273 A.D.2d 790, 790 (N.Y. App. Div. 2000)) (further citation omitted); *see Velasquez v. Quijada*, 269 A.D.2d 592, 592-93 (N.Y. App. Div. 2000). In order to rebut the inference of negligence, the operator of the rear vehicle must provide a non-negligent explanation for the collision. *See Russell v. J.L. Femia Landscape Servs., Inc.*, 161 A.D.3d 1119, 1120 (N.Y. App. Div. 2018); *Nichols v. Turner*, 6 A.D.3d 1009, 1012 (N.Y. App. Div. 2004); *Pitchure*, 273 A.D.2d at 790.

In support of its motion, Defendant directs the Court to the Fourth Department's decision in *Kraeger v. Fed. Express Corp.*, 156 A.D.3d 1467 (N.Y. App. Div. 2017), which the Court agrees is instructive. There, the evidence submitted by the defendant established that its delivery truck was stopped when the plaintiff drove his bicycle into the rear of the

truck; the driver of the truck passed the plaintiff a quarter of a mile before parking on the shoulder of the roadway and activating the truck's four-way flashers; the plaintiff was traveling at a high rate of speed with his head down as he approached and struck the truck from behind; and the plaintiff did not remember the accident, including the moments leading up to it. *Id*. at 1467-68.  The Fourth Department therefore determined that the defendant had demonstrated its "freedom from negligence and a prima facie case of negligence against the injured plaintiff" as a matter of law.  *Id.* at 1468 (quoting *Gee v. Malik*, 116 A.D.3d 918, 919 (N.Y. App. Div. 2014) ("[T]he defendants demonstrated their prima facie entitlement to judgment as a matter of law by establishing that their vehicle was stopped when the injured plaintiff, on his bicycle, veered into the rear of their vehicle.")).  Because, in response, the plaintiff "failed to provide a nonnegligent explanation for the rear-end collision[,]" the court awarded summary judgment to the defendant.  *Id.*

With those principles in mind, the Court finds that Defendant has established a prima facie case of negligence against Plaintiff.  The parties are in agreement that at the time of the accident, Nixon had parked his postal vehicle on the shoulder of Five Mile Line Road and activated the vehicle's hazard lights.  Moreover, Plaintiff admitted in her deposition and to the police officer who arrived at the scene that she glanced down to look at a text message when her bicycle suddenly collided with the back of the postal vehicle.  Thus, Defendant "met [its] initial burden on [its summary judgment] motion by establishing that the vehicle [Nixon] was operating was rear-ended by the [bicycle] operated by [Plaintiff] while [Nixon's] vehicle was stopped . . . which present[s] a prima

fac[i]e case of negligence on the part of [Plaintiff]." *Sheets v. Kilbury*, 196 A.D.3d 1096, 1097-98 (N.Y. App. Div. 2021) (citing *Pitchure*, 273 A.D.2d at 790); *see Nichols*, 6 A.D.3d at 1012-13 (summary judgment in favor of plaintiff on the issue of liability was proper where a stopped vehicle was rear-ended by defendant who testified that "her attention was diverted while driving").

The burden then shifts to Plaintiff to provide a non-negligent explanation for the rear-end collision. Plaintiff has wholly failed to meet that burden. Not only did Plaintiff fail to submit any evidence in opposition to Defendant's summary judgment motion, but Plaintiff's responsive memorandum of law is completely devoid of any mention of a non-negligent explanation for why she collided with the back of the postal vehicle.

Plaintiff's sole argument in opposition is that Defendant has failed to establish that Nixon is free from comparative fault in causing the accident. She contends that because she did not see a postal vehicle on Five Mile Line Road prior to the accident, and that "after glancing down for a moment, the [postal vehicle] was stopped right in front of her," Nixon must have passed her and then pulled over abruptly, causing her to propel her bicycle into the vehicle. (Dkt. 26 at 6). Plaintiff further argues that because at his deposition, Nixon was unable to recall the speed that he was driving, how long he was stopped prior to the accident, specifically arriving at the intersection of Tall Tree Drive and Five Mile Line Road that day, how long he stopped at the intersection for, and whether he checked to see if there was oncoming traffic before proceeding to turn, Nixon's "recollection of events [is] highly questionable." (*Id.*).

Plaintiff's arguments are belied by Defendant's expert, who, after performing an accident reconstruction analysis, opined with a reasonable degree of engineering certainty that based on the speeds that Nixon and Plaintiff were traveling, it was not possible that Nixon passed Plaintiff while on Five Mile Line Road. (Dkt. 23-7 at ¶ 7). Thus, it was also not possible that Nixon drove past Plaintiff and abruptly pulled over and stopped his vehicle. Defendant's expert further opined that Plaintiff was "the sole cause of this accident," which occurred as a result of Plaintiff's "inattentiveness" when she looked down to glance at a text message. (*Id.*). Plaintiff has submitted no expert report of her own to rebut those conclusions.

To be certain, Plaintiff offers no proof that Nixon acted negligently. She testified at her deposition that at no point while Nixon drove on Five Mile Line Road did she observe Nixon pass her, drive at an unreasonable rate of speed, fail to keep a proper lookout, fail to yield to her right of way, or pull out in front of her without warning and abruptly stop, and on this motion, she does not dispute the veracity of those facts. (Dkt. 23-4 at 30-36; *see* Dkt. 27 at ¶¶ 29-33). The only justification that Plaintiff provides for her theory that Nixon acted negligently is that the postal vehicle "didn't just come out of no place." (Dkt. 23-4 at 32; Dkt. 26 at 6; Dkt. 27 at ¶ 33). And though the Court agrees that vehicles do not spontaneously appear, Plaintiff overlooks a simple explanation for why she did not see the vehicle before crashing into it; as she admits, she was looking down as she traveled on Five Mile Line Road (Dkt. 27 at ¶¶ 43-44), which would have prevented her from observing that Nixon had pulled his vehicle over on the shoulder of the road and activated the vehicle's hazard lights.

Plaintiff cannot defeat Defendant's request for summary judgment with conjecture and speculation. Because Plaintiff "neither proffered a non-negligent explanation for the rear-end collision nor raised a triable issue of fact as to whether [Defendant] was at fault in the happening of the accident," *Russell*, 161 A.D.3d at 1120, Defendant has demonstrated entitlement to summary judgment, *see Prosen v. Mabella*, 107 A.D.3d 870, 871-72 (N.Y. App. Div. 2013); *Blasso v. Parente*, 79 A.D.3d 923, 925 (N.Y. App. Div. 2010); *Nichols*, 6 A.D.3d at 1012-13. Accordingly, Defendant's motion for summary judgment on Plaintiff's negligence claim is granted.

## CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion for summary judgment. (Dkt. 23). The Clerk of Court is directed to enter judgment in favor of Defendant and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     February 17, 2026
           Rochester, New York